IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

      v.

DEVONTAE JONES,

           Defendant.

25-CR-6052-MAV

## PLEA AGREEMENT

The defendant, DEVONTAE JONES, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.  THE PLEA AND POSSIBLE SENTENCE

1.     The defendant agrees to plead guilty to Count 2 of the Indictment which charges a violation of Title 18, United States Code, Section 922(o)(1) (possession and transfer of a machinegun) for which the maximum possible sentence is a term of imprisonment of 10 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of 3 years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2.     The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release. As a consequence, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.  ELEMENTS AND FACTUAL BASIS

3.      The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

First, that the defendant knowingly possessed or transferred a machinegun; and

Second, that the defendant knew, or was aware of, the essential characteristics of the firearm which made it a machinegun, as defined by 18 U.S.C. § 921(a).

A "machinegun" is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, *any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun . . .*" 26 U.S.C. § 5845(b) (emphasis added); *see* 18 U.S.C. § 921(a)(24).

## FACTUAL BASIS

4.      The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

a.      The defendant, DEVONTAE JONES, admits and agrees that he is not, and never has been, a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code.

b.      On or about and between March 9, 2024, through and including on or about March 15, 2024, in the Western District of New York, and elsewhere, the defendant did knowingly possess and transfer a machine gun, namely, one (1) FMK model AG1, 9mm pistol bearing serial number AG1BB00082, equipped with a machinegun conversion device (MCD).

c.      More particularly, during this time frame, the defendant possessed, sold and transferred the above-described machinegun described in ¶ 4(b) to

2

an undercover special agent (UC) employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), in exchange for United States currency. The defendant was aware of the essential characteristics of this firearm, namely, that it was capable of firing in a fully automatic mode with the equipped MCD, when the defendant transferred and sold the firearm to the UC.

d.      The defendant's relevant conduct includes additional unlawful firearm sales to the UC, and each transaction is described below. In summary, between February 28, 2024, and May 15, 2024, the defendant shipped firearms and ammunition to the ATF UC on four (4) separate occasions. In total, the defendant sold the UC twenty (20) firearms in this manner, four (4) of which were equipped with MCDs. For each shipment, the defendant would mail the firearms from Georgia to the Rochester, New York area in exchange for United States currency. The transactions are detailed as follows:

e.      On or about and between February 28, 2024, and March 5, 2024, the defendant shipped seven (7) firearms and sundry ammunition to the ATF UC, in exchange for $7,500 in United States currency. The firearms and ammunition involved in this transaction were:

   i.   One (1) American Tactical Imports, model Omni Hybrid, multi-caliber pistol, bearing serial number (SN): NS252346;

   ii.  One (1) HS Produkt model XDE, .45 caliber pistol, bearing SN: HE120013;

   iii. One (1) Glock model 43X, 9mm pistol, bearing SN: BLPC645;

   iv.  One (1) Taurus model TH9C, 9mm pistol, bearing SN: ADE330968;

   v.   One (1) Smith and Wesson model 5903, 9mm pistol, bearing SN: TEF7831;

   vi.  One (1) Taurus model G2C, 9mm pistol bearing SN: TMB58175;

   vii. One (1) Sig Sauer model P320, 9mm pistol bearing SN: 58H189167;

   viii.    Twenty (20) rounds of assorted .223 caliber ammunition;

   ix.  Thirteen (13) rounds of assorted 9mm ammunition;

3

 x. Four (4) rounds of assorted 9mm ammunition;

 xi. Six (6) rounds of Hornady .45 caliber ammunition;

 xii. Twenty-five (25) rounds of assorted 9mm ammunition.

f. On or about and between March 9, 2024, and March 15, 2024, the defendant shipped three (3) firearms including one equipped with an MCD, and sundry ammunition, to the ATF UC in exchange for $2,500 in United States currency. The firearms and ammunition involved in this transaction were:

 i. One (1) Taurus, model G2C, 9mm pistol bearing SN: I735091;

 ii. One (1) Glock model 45, 9mm pistol, bearing SN: BUEU189 (frame) with SN: BSTE390 on the slide and barrel;

 iii. One (1) FMK model AG1, 9mm pistol bearing SN: AG1BB00082 (frame) and SN: BVCM202 on the Glock barrel. This firearm was equipped with a machine gun conversion device;

 iv. Nine (9) rounds of Browning 9mm ammunition.

g. On or about and between March 27, 2024, and April 8, 2024, the defendant shipped six (6) firearms including two (2) equipped with MCDs to the ATF UC in exchange for $7,000 in United States currency. The firearms and ammunition involved in this transaction were:

 i. One (1) Glock model 21 GEN 4, .45 caliber pistol, bearing SN: AHEG021. This firearm was equipped with a machine gun conversion device;

 ii. One (1) Ruger model LCR, .22 caliber revolver, bearing SN: 1541-66865;

 iii. One (1) Sig Sauer model 365, 9mm pistol, bearing SN: 66F273001;

 iv. One (1) Ruger model 9E, 9mm pistol, bearing SN: 337-87216;

 v. One (1) Taurus model PT140 Millenium Pro, .40 caliber pistol bearing SN: SBW96345;

 vi. One (1) Glock model 22, .40 caliber pistol, bearing SN: BBM857US. This firearm was equipped with a machine gun conversion device;

4

vii. Six (6) rounds of assorted .22 caliber ammunition;

viii.    Twenty-three (23) rounds of assorted .45 caliber ammunition;

ix. Fourteen (14) rounds of assorted .40 caliber ammunition;

x. Twenty-four (24) rounds of assorted 9mm ammunition.

h.    On or about and between May 4, 2024, and May 18, 2024, the defendant shipped four (4) firearms including one (1) equipped with an MCD to the ATF UC in exchange for $5,500 in United States currency. The firearms and ammunition involved in this transaction were:

i.    one (1) Glock model 26 GEN 4, 9mm pistol bearing SN: BCEH873. This firearm was equipped with a machine gun conversion device;

ii.    one (1) Romarm/Cugir model Mini Draco, 7.62 caliber pistol bearing SN: ROA22PG8011;

iii.    one (1) Smith & Wesson model SD40VE, 40 caliber pistol bearing SN: FDF1072;

iv.    one (1) Smith & Wesson SD9VE 9mm pistol bearing SN: FZP4038;

v.    twenty-one (21) rounds of assorted 7.62 caliber ammunition;

vi.    twenty-seven (27) rounds of assorted 9mm ammunition;

vii. five (5) rounds of assorted .40 caliber ammunition.

i.    The defendant admits and agrees that he knew and had reason to believe that the ATF UC intended to dispose of the above-referenced firearms unlawfully.

### III.    SENTENCING GUIDELINES

5.    The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## BASE OFFENSE LEVEL

6.      The government and the defendant agree that Guidelines § 2K2.1(a)(5) applies

to the offense of conviction and provides for a base offense level of 18.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

7.      The government and the defendant agree that the following specific offense

characteristics apply:

     a.     the four-level increase pursuant to Guidelines § 2K2.1(b)(1)(B) (offense involved 8-24 firearms);

     b.     the two-level increase pursuant to Guidelines § 2K2.1(b)(4)(A) (offense involved a stolen firearm); and

     c.     the five-level increase pursuant to Guidelines § 2K2.1(b)(5)(C) (trafficking two or more firearms).

## ADJUSTED OFFENSE LEVEL

8.      Based on the foregoing, it is the understanding of the government and the

defendant that the adjusted offense level for the offense of conviction is 29.

## ACCEPTANCE OF RESPONSIBILITY

9.      At sentencing, the government agrees not to oppose the recommendation that

the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance

of responsibility) and further agrees to move the Court to apply the additional one (1) level

downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of

26.

## CRIMINAL HISTORY CATEGORY

10.    It is the understanding of the government and the defendant that the defendant's criminal history category is II. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS, AND IMPACT

11.    It is the understanding of the government and the defendant that, with a total offense level of **26** and a criminal history category of **II**, the defendant's sentencing range would be a term of imprisonment of **70 to 87 months**, a fine of **$25,000** to **$250,000**, and a period of supervised release of **1 to 3** years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

12.    The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

13.    On or about February 5, 2025, the defendant was convicted by way of guilty plea, in Dekalb County Superior Court, in Decatur, Georgia, of the crimes of (1) Theft by Receiving Stolen Property; (2) Possession of Sawed-Off Shotgun, Sawed-Off Rifle, Machine Gun, Dangerous Weapon, or Silencer; (3) Possession of a Schedule IV Controlled Substance; (4) Purchase, Possession, Manufacture, Distribution, or Sale of Marijuana; (5) Possession of a Schedule I Controlled Substance. For each of these crimes he was sentenced to two (2) years' imprisonment followed by a term of probation, each of which were to run concurrently. The government agrees to recommend that any sentence of imprisonment imposed on the charge of conviction before this Court run concurrently to the sentence of imprisonment imposed in connection with the above-described convictions from Dekalb County Superior Court from on or about February 5, 2025. The defendant understands that the Court is not bound to sentence the defendant concurrently or partially concurrently.

14.    The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court or because of the imposition of the sentence of imprisonment concurrently, partially concurrently, consecutively, or partially consecutively with any undischarged term of imprisonment being served by the defendant, including the sentences of imprisonment imposed by Dekalb County Superior Court from on or about February 5, 2025.

8

15. In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

## IV. STATUTE OF LIMITATIONS

16. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense, which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or the vacating of the conviction becomes final.

## V. IMMIGRATION CONSEQUENCES

17. The defendant represents that the defendant is a citizen of the United States. However, if the defendant is a naturalized citizen of the United States, the defendant understands that pleading guilty may result in denaturalization and removal. If the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant understands that any effect that the defendant's conviction in this action will have upon the defendant's immigration status, that is, possible removal, denaturalization, or other immigration consequence, is the subject of a

separate proceeding. The defendant has had an opportunity to fully determine what the consequences of the defendant's conviction may be on the defendant's immigration status, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the guilty plea may entail.

18.    The defendant understands that the defendant is bound by the guilty plea regardless of the immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to the guilty plea and to the sentence based on those consequences and agrees not to seek to withdraw the guilty plea or to file a direct appeal or any kind of collateral attack challenging the guilty plea, conviction, or sentence based on the immigration consequences of the guilty plea, conviction, or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

## VI.  GOVERNMENT RIGHTS AND RESERVATIONS

19.    The defendant understands that the government has reserved the right to:

a.    provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offenses charged, the circumstances surrounding the charges and the defendant's criminal history;

b.    respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.    advocate for a specific sentence consistent with the terms of this agreement, including the amount of fine and the method of payment;

    d.      modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

    e.      oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

20.    At sentencing, the government will move to dismiss the remaining counts of the Indictment pending against the defendant.

21.    The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII.   APPEAL RIGHTS

22.    The defendant knowingly waives the right to appeal and collaterally attack the defendant's conviction in any proceeding, including, but not limited to, an application under Title 28, United States Code, Section 2255, and/or Section 2241. In addition to any other claims the defendant might raise, the defendant knowingly waives the right to challenge the conviction based on: (1) any non-jurisdictional defects in the proceedings prior to entry of this plea; (2) a claim that the statute to which the defendant is pleading guilty is unconstitutional; and (3) a claim that the conduct admitted in the Factual Basis of this plea agreement does not fall within the scope of the statute to which the defendant is pleading guilty.

23.    The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack, in any proceeding, including but

not limited to, an application under Title 28, United States Code, Section 2255 and/or Section 2241, any component of a sentence imposed by the Court which falls within or is less than the sentencing range for **imprisonment of 70 to 87 months, a fine of $25,000 to $250,000, and a period of supervised release of 1 to 3 years**, notwithstanding the manner in which the Court determines the sentence. The defendant further knowingly waives the right to appeal and/or collaterally attack any condition of supervised release imposed by the Court for which the defendant had notice, including from a recommendation by the Probation Office in the Presentence Investigation Report, and an opportunity to object. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise.

24.     The defendant understands that by agreeing not to collaterally attack the conviction or sentence in any proceeding, including, but not limited to, an application under Title 28, United States Code, Section 2255 and/or Section 2241, the defendant is waiving the right to challenge the conviction or sentence in the event that, in the future, the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

25.     The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for **imprisonment of 70 to 87 months, a fine of $25,000 to $250,000, and a period of supervised**

12

**release of 1 to 3 years**, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

26.    By entering this plea of guilty, the defendant waives any and all right to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the government has failed to produce any discovery material (other than information establishing the factual innocence of the defendant), that has not already been produced as of the date of the signing of this Agreement.

## VIII.    TOTAL AGREEMENT AND AFFIRMATIONS

27.    This plea agreement represents the total agreement between the defendant, **DEVONTAE JONES**, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

> MICHAEL DiGIACOMO
> United States Attorney
> Western District of New York
>
> BY:
>
> MATTHEW T. McGRATH
> Assistant U.S. Attorney
>
> Dated: September ___, 2025

I have read this agreement, which consists of pages 1 through 14. I have had a full opportunity to discuss this agreement with my attorney, Maurice J. Verrillo, Esq. I agree that it represents the total agreement reached between myself and the government. No promises

13

or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
DEVONTAE JONES
Defendant

Dated: September _10_, 2025

_____
MAURICE J. VERRILLO, ESQ.
Attorney for the Defendant

Dated: September _10_, 2025

14